### McCORMICK HARVESTING MACH. CO. *v.* MINNEAPOLIS HARVESTER WORKS.

*(Circuit Court, D. Minnesota. April 7, 1890.)*

PATENTS FOR INVENTIONS—PRIORITY—LACHES.
  An improvement in grain-binders was conceived, and orally explained by the inventor, in June, 1879, to persons skilled in the operation of harvesters, and their construction. His devices were constructed and in operation on a machine in the harvest of 1880, and a patent was applied for in June, 1881. Complainant's assignor applied for a patent in April, 1880. *Held,* that the first inventor did not lose his claim to priority by delay.

In Equity. Bill to determine priority of invention.
*Parkinson & Parkinson,* for complainants.
*J. R. Bennett,* for defendant.

NELSON, J. This is a suit in equity, brought, under section 4915 of the Revised Statutes of the United States, by the complainant, to whom a patent on application was refused by the commissioner of patents, praying a decree that he is entitled, according to law, to receive a patent for his invention relating to improvements in grain-binders, as specified in the following claim:

"In combination with the knotter, a cord-holder, mounted on a swinging frame, pivoted as described, to oppose its weight to the stress of the cord, a projecting arm from said frame, and a cam upon a revolving shaft, adapted to force said holder down, after the knotting operation terminates."

The complainant brings the suit as assignee of Charles Jewell, and against the defendant, who is the assignee of John F. Appleby. The answer denies that Jewell was the first inventor, and entitled to a patent therefor. The cause is put at issue by replication, and the only proofs submitted were those taken in the patent-office, during the pendency of an interference between the invention of Jewell, as heretofore set forth and claimed, and the second claim of Appleby, which is in the following words:

"In combination with the tyer and cord-holder, mounted on the swinging frame, $z^2$, pivoted as described, to oppose its weight against the cord; the arm, $f^2$, on said frame, and the cam, $f^3$, on the shaft, $f$, adapted to control the action of the cord-holder, substantially as and for the purpose hereinbefore described."

The examiner of interferences, the board of appeals, and the commissioner of patents adjudged priority of invention in favor of Appleby, and refused a patent to Jewell's assignee.

Subsequent to the commencement of this suit, a bill in equity was filed by the defendant against the complainant in this cause, a patent having been issued to it, as assignee of Appleby, embracing the claim above set forth; and all the copies of the patent-office records in the latter cause, which are now pending in this court, are stipulated into this cause. The application of Jewell was formally filed on the 23d of April, 1880. The application of Appleby was filed June 29, 1881, and a patent was issued, embracing this claim, August 15, 1882. On the testimony before the patent-office, the examiner and the board of appeals promptly decided in favor of Appleby. The commissioner of patents, however, expressed grave doubts about the correctness of the award of the board of examiners, but refused to overrule it. The claim of Appleby to priority rests upon the testimony of Dixon, Carver, and Appleby himself. Dixon, who is an expert in patent matters, testifies that Appleby explained to him the invention for which Jewell's assignee now asks a patent about the 15th of June, 1879, and that his explanations were made in the presence of a grain-binder, and that they were perfectly intelligible to him, and that Appleby pointed out on the grain-binder present how he would apply the invention; and in fact that the explanations were made so clear that he or any good mechanic could have made the device from the descriptions given. He says in his deposition, in answer to the second question—

"Are you acquainted with John F. Appleby, now present, and a party to this interference? *Answer.* Yes, sir.. *Q.* 3. How long have you known him, and when and where have you principally met him? *A.* I have known him since the fall of 1878. Met him in Plano, Illinois, in 1879 and 1880. * * * *Q.* 4. What was he doing, and what were you doing, when you met him in Plano, Illinois? *A.* He was adapting his binder to our harvester. I was looking after Mr. Deering's business, as I am now. *Q.* 5. Had you any conversation with Mr. Deering * * * in reference to the device which holds the cord below the knot-tying device? If so, state when. *A.* I had, about the 15th of June, 1879. *Q.* 6. State what the conversation was. *A.* Well, we were trying cord,—different kinds of cord,—and there was one kind—'jute cord,' I think they called it—that we couldn't make work. It would pull in two before it would draw through the disk. Mr. Appleby remarked to me that he had a device by which he could float the disk, the notched wheel forming part of the cord-holding mechanism, and use that cord. He went on to explain it to me, and I objected to it on the ground that he could not cam it up in correct time with the knotter, and would break the cord. He explained that he had that fixed all right, as he would cut away the cam, and let the cord draw the cord-holder up to the knotter, as the knotter required the cord, and only cam it down. I remarked to him that I thought that was all right, and I had no more conversation on that subject with him until I saw the device."

Jewell conceived the invention not earlier than the time when Brown, the blacksmith, according to the testimony, placed the arm in the binder in September, 1879. Cable testifies that he saw Brown put it in at that time. Brown swears he did the work in the summer or fall of 1879, and Van Tassell is certain the cord was not operated by the depending arm and cam in July, 1879, and that the arm was not on the cord-holder at that time. Appleby conceived the invention as early as June, 1879, as appears from the testimony of Dixon and Carver, which corroborates Appleby. Shufeldt, employed by the Minneapolis Harvester Works at the time Appleby was superintendent, made the patterns of Appleby's device the latter part of July or the 1st of August, 1880. He testifies that Appleby took him to a machine (an Appleby binder) that had no swinging frame upon it, and orally described the device, and pointed out with his hand what he wanted put upon the binder, and from that description he understood how to make the patterns, to apply the device to the machine, and how it was to operate. The machine was made as soon as the patterns were finished, and was completed not later than August 15, 1880, and was operated in the field the same month.

The real question is, was the patent-office decision, giving priority to Appleby, correct; or did the delay of Appleby in putting his device in operation in the field, and in filing his application for a patent, deprive him of his claim to priority of invention? The true rule is, as between two independent inventors, each claiming priority of invention—

"That if the first person to adequately conceive and disclose an invention, actually reduces it to practice, and connects his conception and completion by such diligence as his circumstances and the character of his invention admit of, his right to a patent cannot be defeated by any amount of diligence in coming to the patent-office of an inventor whose conception is of later date." *Hunter* v. *Miller*, 50 O. G. 1766.

He who first conceives and gives expression to the idea of an invention in such clear and intelligible manner that a person skilled in the business could construct the thing, is entitled to a patent, provided he uses reasonable diligence in perfecting it.   Such description or expression of the idea may be oral, and need not necessarily be in writing, or accompanied by a drawing, and the right of the first inventor is not lost merely by lapse of time between the invention and application for a patent. *Dietz* v. *Burnham* and *Gibbs* v. *Johnson*, MORRELL, J.   See Laws. Patent Dig. 429.   Judge STORY states that rule in *Reed* v. *Cutter*, 1 Story, 590, as follows:

"He who invents first shall have the prior right, if he is using reasonable diligence in adapting and perfecting the same, although the second inventor has in fact first perfected the same, and reduced the same to practice in a positive form."

And in *Hubel* v. *Dick*, 28 Fed. Rep. 140, Judge SHIPMAN, in the case under consideration by him, where the time during which the inventor being chargable with laches was 19 months, and 10 months elapsed after the completion of the machine, and before he applied for a patent, said : "I cannot say that there were such laches as should deprive him of the reward which ordinarily attends priority of invention."

I think the testimony also justifies me in saying that Appleby used proper diligence during the period between his conception and description of the machine to Dixon and Carver and the completion of his invention, when the castings were made from Shufeldt's patterns, and the machine put in the field.   Appleby was entitled to a reasonable time, to be judged of according to the circumstances of the case, in which to perfect his invention, and reduce it to practice, without impairing his claim to priority.   His invention was an important one, and he had a machine with it on in the field before the close of the next year's harvest, after his description and explanation of his invention to Dixon and Carver. He might have been more expeditious in having a machine made embodying his invention, but did he delay for an unreasonable period the practical embodiment of his mental conceptions, so as to deprive him of his claim of priority?   The answer to this question is not free from doubt; but, considering the nature of the invention, and also the fact that Appleby was engaged in making application for other important improvements then in use connected with harvester machines, I do not think such delay fatal to his claim of priority.   A decree will be entered dismissing the bill.